# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PHILIP WENTZEL,**

    **Petitioner-Defendant,**

  v.                                           **Case No. 14-C-1305**
                                                  **(Criminal Case No. 12-CR-116)**

**UNITED STATES OF AMERICA**

    **Respondent-Plaintiff.**

## RULE 4 ORDER

    Petitioner Philip Wentzel, a former Milwaukee County deputy sheriff, drugged and sexually abused children entrusted to his care, creating and distributing pornographic images of them. His conduct came to light when FBI agents in Denver seized images of child pornography from a man named Robert Mueller, which they were able to trace to petitioner in Wisconsin. Agents obtained an arrest warrant, and in a post-arrest statement petitioner admitted making images of child pornography and using a screen name associated with the images seized from Mueller. Agents also obtained warrants to search petitioner's residence and trailer, seizing a laptop computer from which they recovered a series of chat logs in which petitioner talked about how he drugged his victims to create the images; in other chats he provided a detailed description of how to drug children. Agents also located drugs he used. The victims included petitioner's adopted daughter, biological siblings of his adopted daughter, and children of family friends involved in supervised camping trips with petitioner.

    Petitioner pleaded guilty to seven counts of producing child pornography, and I sentenced him to a total of 40 years in prison. He filed a notice of appeal, but his appointed

counsel moved to withdraw under Anders v. California, and petitioner then moved to dismiss his appeal. Petitioner now moves to vacate his sentence under 28 U.S.C. § 2255.[1]

## I. SECTION 2255

The district court must conduct a preliminary review of a § 2255 motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b), Rules Governing § 2255 Proceedings. Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." Blake v. United States, 723 F.3d 870, 878-79 (7th Cir. 2013), cert. denied, 134 S. Ct. 2830 (2014).

## II. DISCUSSION

Petitioner raises nine claims. The first attacks the court's jurisdiction, the remaining eight allege ineffective assistance of counsel. None have merit.

---

[1] Petitioner filed his § 2255 motion on October 17, 2014. On October 27, 2014, he filed a motion to supplement, seeking to provide additional information in support of his claims. I will consider the additional information in screening the motion. See Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999).

2

**A.    Jurisdiction**

Petitioner first argues that the court lacked subject matter and personal jurisdiction. He contends that Article III courts are precluded from sitting in judgment of practically all criminal cases, Congress is not empowered to enact national criminal statutes, and the government lacks power to enforce criminal laws outside federal enclaves. This claim is frivolous and requires no further discussion. United States v. Banks-Giombetti, 245 F.3d 949, 953 (7th Cir. 2001); United States v. Lampley, 127 F.3d 1231, 1245-46 (10th Cir. 1997); see also United States v. Hernandez, 330 F.3d 964, 977-78 (7th Cir. 2003).

**B.    Ineffective Assistance**

Ineffective assistance of counsel claims may be raised for the first time under § 2255. See Massaro v. United States, 538 U.S. 500, 504 (2003). "A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." Blake, 723 F.3d at 879 (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). To satisfy the first element, the defendant must direct the court to specific acts or omissions by his counsel falling outside the wide range of professionally competent assistance. Id. To satisfy the second element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id.

**1.    Failure to Investigate**

Petitioner contends that counsel failed to properly investigate the case, namely potential

fourth amendment violations by investigating officers related to discovery, evidence and potential criminal local rule 16 violations. He contends that a full and complete investigation into how discovery material was obtained could have led to its exclusion and his decision not to plead guilty.

When counsel's alleged deficiency involves a failure to investigate, the defendant must provide the court with a comprehensive showing as to what the investigation would have produced. Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2004). Petitioner provides no specifics here. Nor does he explain how any investigation could have led to the exclusion of evidence. See United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious."). Finally, he identifies no basis for finding a violation of local rule 16, which pertains to discovery.

### 2. Drugging

In the § 2255 motion, petitioner argues that counsel failed to properly argue that no evidence supported "drugging" claims in counts three and four, or to argue in support of petitioner's first amendment right to free speech, resulting in a 4 level increase on both counts.[2] In his supplement, petitioner argues that counsel failed to argue that, aside from the chats recovered from his computer, the pre-sentence report ("PSR") contained no specific evidence of drugging, and it provided no correlation between the chats and actual drugging. He further contends that counsel failed to argue his right to free speech, i.e., that he was simply talking about criminal activity. He also notes that the videos involved in these counts were produced

---

[2]Presumably, petitioner refers to the 4 level increase under U.S.S.G. § 2G2.1(b)(2)(B). (PSR ¶ 62, 71.)

4

at 10:26 p.m. and 10:55 p.m., a time not uncommon for sleep, and counsel failed to argue that no sex act occurred that necessarily required his victims be drugged rather than asleep. Finally, counsel failed to argue the absence of physical proof, victim statements, or scientific evidence of drugging.

The PSR stated, without objection, that petitioner drugged the victims in these counts, rendering them unconscious and engaging in sexual acts with them. (PSR ¶ 62, 71.) The PSR set forth detailed excerpts from petitioner's chat logs in which he discussed how he used Ambien to drug the victims. (PSR ¶¶ 25-30.) He explained how the drug put his child-victims out deeper than ordinarily sleep, as well as creating "some level of amnesia." (PSR ¶ 30.) These admissions alone sufficed, see, e.g., United States v. Vaughn, 585 F.3d 1024, 1032 (7th Cir. 2009) (holding that the court may at sentencing rely on a defendant's admissions, notwithstanding any claim that he was lying, bragging, or puffing), but the PSR also set forth corroborating evidence: when agents searched petitioner's home, they recovered Ambien and other drugs (PSR ¶ 31), and the victims' unconscious or semi-conscious state was depicted in the videos themselves (PSR ¶¶ 62, 71). Finally, in providing his summary of the offense conduct to the writer of the defense sentencing report, petitioner admitted that "he watched, photographed, drugged and engaged in non-consensual sexual activities with the other girls listed in the Plea Agreement." (R. 27-1 at 6.)

Petitioner fails to explain how counsel could have argued against the enhancements given all of this evidence. He provides no authority supporting his contention that further scientific evidence or physical proof was necessary. And any contention that the chat logs were protected by the first amendment is frivolous; petitioner was punished for the conduct to which he confessed in those statements, not for the speech itself.

5

### 3. Distribution

In his § 2255 motion, petitioner argues that counsel failed to properly investigate the source of each file in each count to determine if it came from the purported source, resulting in "distribution" and a 2 level increase on each count.[3] He contends that the files did not come from the source referenced and were never distributed. In the supplement, petitioner argues that a proper investigation would have revealed that the video in count four could not have come from the hard drive of Robert Mueller. He contends that counsel was never, to his knowledge, provided with evidence showing that he had contact with Mueller. Finally, he contends that counsel failed to investigate potential fourth amendment violations regarding how his hard drive was obtained. He asks for a hearing to determine the true source of each file and whether he distributed them to Mueller.

The PSR stated, without objection, that the images associated with each count were recovered from the hard drive of Robert Mueller, who obtained the images directly from petitioner. (PSR ¶¶ 45, 54, 63, 72, 80, 88.) The PSR explained that Mueller's hard drive contained a subfolder called "Countryboy" – petitioner's admitted screen name – which contained images of victims in this case. (PSR ¶¶ 17-20.) Petitioner fails to explain what sort of investigation counsel should have engaged in to refute this, nor does he identify any evidence supporting his bald claim that the images were never distributed. Even at sentencing, a defendant's bare denial of information set forth in a PSR will not suffice, e.g., United States v. Williams-Ogletree, 752 F.3d 658, 664 (7th Cir. 2014); it plainly does not suffice to warrant a hearing under § 2255, see Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005).

---

[3]Presumably, petitioner here refers to the 2 level increase under U.S.S.G. § 2G2.1(b)(3). (PSR ¶¶ 45, 54, 63, 72, 80, 88.)

### 4. Commission of Sex Act

Petitioner argues that counsel failed to argue against the 2 level increase for commission of a sexual act on count six. Petitioner received no enhancement under U.S.S.G. § 2G2.1(b)(2) on this count (PSR ¶¶ 86-93), so there was no reason for counsel to argue against it.

### 5. Petitioner's Statements

In his § 2255 motion, petitioner argues that counsel failed to properly investigate and subsequently argue against petitioner's alleged admissions of guilt. Petitioner claims that he made no such statements in an unrecorded interview. In the supplement, petitioner contends that counsel failed to challenge whether his statements to the FBI were obtained legally and not in violation of the Fifth Amendment. He asserts that he never made admissions of guilt to investigators; he only agreed to speak with investigators, without counsel present, about the identity of individuals in certain photos presented to him. He contends that he was clear with the investigators that he did not wish to speak with them about criminal activity without an attorney present. He contends that, to the best of his recollection, he made no statements of guilt to investigators, and if there were any it was after one of the agents grabbed his hand.

During his plea colloquy, petitioner admitted, subject to prosecution for perjury or false statement, that the factual basis set forth in his plea agreement was substantially correct. (Plea Hr'g Tr. [R. 41] at 5.) The plea agreement sets forth petitioner's admission, following advice of his Miranda rights, to taking the images and videos of child pornography referenced in the plea agreement. (Plea Agreement [R. 17] at 7.) He cannot now deny those admissions. See United States v. Purnell, 701 F.3d 1186, 1190-91 (7th Cir. 2012) ("We may reject out of hand,

7

absent a compelling explanation, factual allegations that depend on the defendant having committed perjury at a plea hearing."). Nor does petitioner provide any basis for suppression of his statements to law enforcement. See Cieslowski, 410 F.3d at 360.[4]

### 6. Cumulative Effect

Petitioner contends that counsel's failures, whether acts or admissions, should be considered for their cumulative effect to determine if relief is warranted. To the extent that this constitutes a separate claim for relief, petitioner fails to establish any instances of deficient performance.

### 7. Post-Traumatic Stress Disorder/Brain Abnormalities

In his § 2255 motion, petitioner contends that counsel failed to properly address and investigate his claim of post-traumatic stress disorder ("PTSD") and potential physical abnormalities, specifically brain abnormalities caused by sports-related injuries. Either or both, he contends, could have reduced his culpability and decision to plead guilty. In the supplement, petitioner contends that he advised counsel of his desire to explore the possible defense of PTSD and potential abnormalities. He indicates that he suffered from nightmares, insomnia, and other symptoms of PTSD related to his former profession of deputy sheriff. He also claims he told counsel that he suffered numerous blows to the head playing hockey, which caused potential brain injuries. He asked counsel to obtain an MRI to determine if diminished capacity was a potential defense. He concludes that counsel failed to follow up on these

---

[4] For instance, he does not contend that any conduct by the FBI rendered the statements involuntary, or that the agents violated his Miranda rights. I also note that, during his sentencing allocution, petitioner stated that he fully cooperated with investigators and admitted his crimes. (Sen. Tr. [R. 46] at 24: "Without a doubt what I did was wrong, and I've acknowledged that since the day of my arrest. I've been nothing but truthful with the investigators answering all of their questions.".)

8

claims.

This claim fails under both prongs of the Strickland test. First, petitioner presents no evidence that he, in fact, suffers from PTSD or brain abnormalities, so he cannot show prejudice based on counsel's alleged failure to pursue a defense based on these conditions. Second, the record shows that counsel did investigate these issues, so petitioner cannot show deficient performance. Prior to sentencing, counsel commissioned a defense sentencing report (R. 27-1) and a psychological evaluation report (R. 27-2), which discussed the stress associated with petitioner's job (R. 27-1 at 7; R. 27-2 at 5) and petitioner's hockey injuries (R. 27-1 at 8). Neither report supports petitioner's current claims. Petitioner's mother specifically told the author of the former report that although petitioner suffered injuries playing hockey he "never had a head injury or concussion to her knowledge." (R. 27-1 at 8.) The psychological report lists several diagnoses, but not PTSD or brain abnormalities. (R. 27-2 at 5-6.) The psychologist found "no indication of major mental illness or cognitive deficits." (R. 27-2 at 5.)

### 8. AUSA/Victims' Statements

Finally, in his § 2255 motion petitioner contends that counsel failed to object at sentencing to numerous statements made by the AUSA and others that were inflammatory, speculative, and not supported by facts or evidence. He contends that such statements were prejudicial to him. In the supplement, petitioner states that counsel failed to object to the AUSA's assertion that he used his position in law enforcement to obtain victims; that he drugged victims; that he was sexually attracted to children; that he admitted he could not control himself; and that he would always pose a danger. He further asserts that counsel should have argued that the offense conduct occurred over a brief period – two of his forty years of life. Finally, he contends that counsel should have objected to or argued against the

9

victims' statements, which were based on conjecture or emotion.

The record definitively refutes petitioner's claims. At sentencing, the AUSA noted that the parents of petitioner's victims trusted him because he was a law enforcement officer, thus allowing him to gain access to their girls. (Sen. Tr. [R. 46] at 33.) This was corroborated by one of the parents. (Sen. Tr. at 45: "The one time I let my daughter go somewhere – because I trusted that you worked for the Milwaukee County Sheriffs Department, and she was safe.") Nevertheless, when given a chance to respond, defense counsel did argue that the evidence failed to support any active abuse of a position of trust. (Sen. Tr. at 49.)

The AUSA argued that petitioner drugged the victims. (Sen. Tr. at 39.) As discussed above, the evidence supported that contention. The AUSA also commented on petitioner's attraction to young girls and his inability to control his urges (Sen. Tr. at 34), despite being in treatment (Sen. Tr. at 35). These statements were supported by petitioner's own psychological report, which listed a diagnosis of Pedophilia (R. 27-2 at 5) and noted his "high level of sexual deviance and compulsivity" and that he continued to offend and escalated his conduct despite being in treatment (R. 27-2 at 4). Both sides presented their predictions of future dangerousness, as they were entitled to do. (Sen. Tr. at 18; 34.) Further, defense counsel did argue that I should consider the entirety of petitioner's life, not just the two year period in which he engaged in this conduct. (Sen. Tr. at 14.) Finally, the victims had a right to speak under 18 U.S.C. § 3771(a)(4), and petitioner fails to explain how counsel could have objected to anything they said. Victims are permitted to express an emotional response to crimes committed against them.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion (R. 1) is **DENIED**, and this case is **DISMISSED**.  The Clerk is directed to enter judgment.

**IT IS FURTHER ORDERED** that petitioner's motion to supplement (R. 4) is **GRANTED**.

**FINALLY, IT IS ORDERED** that petitioner's application to proceed in forma pauperis (R. 2) is **DENIED** as moot.  There is no filing fee under § 2255.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner.  In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing requires a demonstration that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Narvaez v. United States, 674 F.3d 621, 626 (7th Cir. 2011).  For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 30th day of October, 2014.

/s Lynn Adelman
LYNN ADELMAN
District Judge

11